## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STATE AUTO PROPERTY & CASUALTY INSURANCE CO.,** | : | No. 3:07cv1415 |
| Plaintiff | : | (Judge Munley) |
| v. | : | |
| **PRO DESIGN, P.C.,** | : | |
| Defendant | : | |

## MEMORANDUM

Before the court for disposition is the plaintiff's motion for summary judgment in this automobile insurance declaratory judgment action. Having been briefed and argued, the matter is ripe for disposition. The issue we must decide is whether Defendant Pro Design can avail itself of stacked underinsured motorist benefits if it waived stacking on a single-vehicle policy where it subsequently added two vehicles to the policy and never signed a waiver of stacking for those additional vehicles.

**Background**[1]

On October 28, 2006, Ronald Dillman and Christine Dillman were involved in an automobile accident. The vehicle which they were in was insured through a Business Auto Policy[2] issued by State Auto Property & Casualty Insurance Company (hereinafter "plaintiff" or "State") on June 6, 2001. (Doc. 12, Statement of Material Facts, ¶ ¶ 1, 9).[3] The Dillmans

---

[1]For these background facts, we cite to the plaintiff's statement of material facts. The defendant does not dispute these facts.

[2]The insurance policy number is BAP2064494.

[3] The policy was amended in June 2006 to change the named insured to "Pro Design Plus, P.C. and/or Ronald Dillman." (Id. at ¶ 5). We shall refer to Defendant Pro Design Plus as "he" because it acted at all

have made a claim to plaintiff for underinsured motorist benefits. (Id. at ¶ 9).

At its inception, the policy listed one vehicle as a covered auto. (Id. at ¶ 2). The policy provides for $35,000.00 in uninsured motorist (hereinafter "UM") coverage and underinsured motorist (hereinafter "UIM") coverage. When he bought the insurance policy, Ronald Dillman, on behalf of Pro Design Plus, P.C., signed a written waiver of stacked underinsured motorist coverage. (Id. at ¶ 8). Defendant renewed the policy in 2002, 2003 and 2004 for "Policy Periods" of June 6, 2002 to June 6, 2003; June 6, 2003 to June 6, 2004 and June 6, 2004 to June 6, 2005. (Id. at ¶ 1).

On August 17, 2004, over three years after the inception of the policy, defendant added a second vehicle to the policy and on November 24, 2005, defendant added a third vehicle. (Affidavit of Defendant Ronald Dillman). Plaintiff did not provide a waiver of stacking form to the defendant when coverage was provided for these additional vehicles.

After the Dillmans made a claim for underinsured motorist benefits, plaintiff filed the instant declaratory judgment action to determine its obligation under the policy of insurance. Plaintiff's position is that stacking of underinsured motorist benefits is inapplicable to the Dillman's claim. Plaintiff thus argues that the limit for liability is $35,000.00. The defendant argues that stacking does apply and that the limit for liability is $105,000.00, that is $35,000.00 stacked over the three vehicles covered by the policy. At the close of discovery, the plaintiff filed a motion for

---

times through Ronald Dillman.

summary judgment bringing the case to its present posture.[4]

**Jurisdiction**

This Court has jurisdiction pursuant to the diversity jurisdiction statute, 28 U.S.C. § 1332.  The plaintiff is an Iowa corporation with a principal place of business in Ohio.  (Doc. 1, Complaint at ¶ 1).   The defendant is a professional corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business in Frackville, Pa.  (Id. at ¶ 2).   We have authority to enter a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§  2201, 2202.

As a federal district court sitting in diversity, we must apply state law. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).  In this case, the relevant state is Pennsylvania.  If the state supreme court has not yet addressed an issue before us, we must predict how that court would rule if presented with that issue.  Nationwide v. Mutual Ins. Co., 230 F.3d 634, 637 (3d Cir. 2000).

**Standard of review**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged

---

[4] Initially a second issue was involved in this case.  The parties disputed the amount of UM/UIM coverage available.  In its brief, however, the defendant concedes the accuracy of plaintiff's assertion that the UM/UIM limit per vehicle is $35,000.00.  (Doc 14, Defendant's Brief at 1).

3

factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. <u>International Raw Materials, Ltd. v. Stauffer Chemical Co.</u>, 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. <u>Anderson</u>, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. <u>Id.</u> Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. <u>Celotex v. Catrett</u>, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. <u>Id.</u> at 324.

**Discussion**

This case involves intra-policy stacking of insurance policy benefits,[5] that is multiplying the limits of UM/UIM coverage under a single policy by

---

[5]Another type of stacking exists, inter-policy stacking, which "is the addition of coverages for vehicles insured under different policies of insurance. " <u>McGovern v. Erie Ins. Group</u>, 796 A.2d 343, 345 (Pa. Super. Ct. 2002). That type of stacking is not at issue in the instant case.

the number of vehicles insured under that policy.  Generette v. Donegal Mut. Ins. Co., 884 A.2d 266, 270 n.7 (Pa. Super. Ct. 2005). The Pennsylvania Motor Vehicle Financial Responsibility Law (hereinafter "MVFRL")  provides for intra-policy stacking of insurance of multiple cars insured by the same insurance policy.  In other words, the limits of coverage for an insured is the sum of the limits for each motor vehicle that the injured party has insured.  Specifically the law provides:  "[w]hen more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverage available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is insured." 75 PENN. CONS. STAT. ANN. § 1738(a).

  For example, if an insured who has three automobiles insured under one insurance policy with underinsured coverage of $35,000.00 on each vehicle, has an accident with one of the covered vehicles, then the underinsurance coverage under 1738(a) is the sum of coverage for each car - $35,000.00 plus $35,000.00 plus $35,000.00, or $105,000.00.

  This stacking of uninsured or underinsured coverage, however, may be waived. Id. at 1738(b). "Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase [unstacked] coverage." Id. at § 1738(c).  In above example with the three cars, if stacking is waived the coverage after an accident is $35,000.00 instead of $105,000.00.

  The presumption is that stacking applies to insurance policies.  75

PENN. CONS. STAT. ANN. § 1738(a).  Stacking is waived only when the dictates of 75 PENN. CONS. STAT. ANN. § 1738(c) are followed. Section 1738(c) provides: "More than one vehicle. - Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b) [relating to waiver of stacked coverage]."

In the instant case, defendant alleges that stacking applies because he was not provided the opportunity to waive stacking when he purchased the policy in effect at the time of the accident.  State argues that the waiver of stacking that occurred at the initiation of the single-vehicle policy - - to which automobiles were later added - - is valid as to the automobiles later added.  There was no need, in State's view, to obtain additional waivers merely because vehicles were added to an already existent single-vehicle policy.  After a careful review, we agree with the defendant.

We bear in mind the following general principles in approaching this issue:

> [T]he MVFRL was enacted as a means of insurance reform to reduce the escalating costs of purchasing motor vehicle insurance in our Commonwealth. Lambert v. McClure, 407 Pa.Super. 257, 595 A.2d 629 (1991); Huber v. Erie Insurance Exchange, 402 Pa.Super. 443, 587 A.2d 333 (1991). However, the underlying objective of the MVFRL is to provide broad coverage to assure the financial integrity of the policyholder. Callahan v. Federal Kemper Insurance Company, 390 Pa.Super. 201, 568 A.2d 264 (1989); Omodio v. Aetna Life and Casualty, 384 Pa.Super. 544, 559 A.2d 570 (1989). The Law is to be construed liberally to afford the greatest possible coverage to injured claimants. Sturkie v. Erie Insurance Group, 407 Pa.Super. 117, 595 A.2d 152 (1991). In close or doubtful insurance cases, it is well-established that a court should resolve the meaning of

> insurance policy provisions or the legislative intent in favor of coverage for the insured.

Danko v. Erie Ins. Exchange, 630 A.2d 1219, 1222 (Pa. Super. Ct. 1993); see also Rupert v. Liberty Mut. Ins. Co., 291 F.3d 243, 246 (3d Cir. 2002).

In support of their respective positions, the parties discuss a Pennsylvania Supreme Court case that deals with whether a new waiver of stacking must be provided when an insured adds a vehicle onto a *multi-*vehicle policy, Sackett v. Nationwide Mut. Ins. Co., 940 A.2d 329 (Pa. Dec. 27, 2007) (hereinafter "Sackett II")[6]. The court examined the statute and determined that the operative word is "purchase" i.e. whether adding a vehicle onto a multi-vehicle policy is a new "purchase" of insurance. Sackett II holds that "the extension of coverage under an after-acquired vehicle provision to a vehicle added to a pre-existing multi-vehicle policy is not a new purchase of coverage for purposes of Section 1738(c), and thus, does not trigger an obligation on the part of the insurer to obtain new or supplemental UM/UIM stacking waivers. . . . However, where coverage under an after-acquired-clause is expressly made finite by the terms of the policy...the execution of a new UM/UIM stacking waiver [is required] upon the expiration of the automatic coverage in order for the unstacked coverage option to continue in effect subsequent to such expiration." Sackett II, 940 A.2d at 334.

This holding applies solely to multi-vehicle policies. The court explicitly indicated that it was **not** resolving the issue of the instant case, that is, adding vehicles to a policy that was originally a single-vehicle policy. Id. at n.5.

---

[6]This opinion is the disposition on reargument of Sackett v. Nationwide Mut. Ins. Co., 919 A.2d 194 (Pa. Apr 17, 2007).

7

Plaintiff argues that the analysis of Sackett II is applicable here. State asserts that adding on a vehicle to a single vehicle policy is not a "purchase" of insurance.  Just as in Sackett II, it is merely an extension of coverage and does not trigger the obligation to obtain a signed waiver of stacking.  Further, plaintiff asserts that enforcing the waiver of stacking signed by the Defendant Dillman is consistent with the scheme of the MVFRL and its underlying policies of free choice and cost containment. Any other result would add unnecessary complication and expense to the process of obtaining automobile insurance, would likely result in requiring payment of benefits to those who never paid for such benefits, and would undermine the statutory goal of decreasing the cost of motor vehicle insurance.  (Doc. 13, Plaintiff's Brief at 22).  Plaintiff argues that "there is no logical reason to differentiate between a single vehicle policy and a multi-vehicle policy" in applying the law of Sackett. (Doc. 13, Plaintiff's Brief at 16).

Defendant's argument is that the holding of Sackett II only applies to the degree that coverage under a particular after-acquired vehicle provision continues in effect throughout the existing policy period.  Once that policy period comes to an end, the insurer must obtain a new waiver if an additional vehicle was added during that period.  We agree with the defendant.

As with Sackett II, our analysis turns on the definition of "purchase." Under the statute: "Each named insured **purchasing** uninsured or underinsured motorist coverage **for more than one vehicle** under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b) [relating to

waiver of stacked coverage]." 75 PENN. CONS. STAT. ANN. § 1738(c) (emphasis added).  In the instant case, the defendant signed the waiver of stacking when he purchased a single-vehicle policy.  Thus, when defendant executed the waiver, he did not fall under the protection of section 1738(c) because the policy covered only one vehicle.  When defendant waived intra-policy stacking in the instant case, he waived nothing.  There were no additional cars in the policy. [7]

At the time of signing the waiver, defendant purchased a single-vehicle policy.  Sometime later, he came into possession of a multi-vehicle policy.  When he obtained coverage for multiple vehicles, despite the directive of section 1738, defendant was not provided the opportunity to waive stacking.  We find under the statute that the adding of new vehicles was in fact the purchase of a multi-vehicle policy that required the plaintiff to obtain a waiver of stacking or the coverage would in fact be stacked

---

[7]The waiver reads:
> By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy for myself and members of my household under which the limit of coverage available would be the sum of limits for each motor vehicle insured under the policy.  Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy.  I knowingly and voluntarily reject the stacked limits of coverage.  I understand that my premiums will be reduced if I reject his coverage.

(Complaint Ex. B, 31 Waiver of stacked coverage executed on June 6, 2001).

under 1738(a).[8]

State argues that the defendant had an immediate opportunity to obtain cost savings by waiving stacking. While this statement may be true, it does not accurately reflect the defendant's situation. At the inception of the policy, the defendants had no reason to choose stacking as there was only one vehicle covered under the policy.[9] It would make no sense for the defendant to choose stacking at that point and pay extra premium for no extra coverage.[10] As set forth in the facts above, a second vehicle was not added to the policy until over three years after the initial contract of insurance. At this time, when stacking would actually mean something if defendant was involved in an automobile accident, defendant was not provided the opportunity to waive stacking.

If we were to accept States argument, then a waiver of stacking would never have to be provided to a consumer when a single-vehicle policy is initially bought and later vehicles are added to it. This is so because the defendant's position is that the only "purchase" is the initiation of the single-vehicle policy, and under section 1738(c) an opportunity to waive stacking is **not necessary** for single-vehicle policies. For example,

---

[8]We do not decide whether the "purchase" occurred initially when the second car was added to the single-vehicle policy or when the policy came up for renewal. That decision is irrelevant to our analysis as the plaintiff did not provide the opportunity for waiver at either instance.

[9]The parties do not address the issue of inter-policy stacking as it is evidently inapplicable to this case. Therefore, when we speak of stacking, we are referring to intra-policy stacking.

[10]The record is unclear as to how much savings plaintiff provided the defendant for waiving this "benefit."

in the instant case, there was no need for State to provide a waiver under 1738(c) in 2001 when the policy began, because there was only one vehicle covered by the policy. When additional vehicles were added, which is not a "purchase" according to the plaintiff, then the opportunity to waive would not be mandated by the act. This construction of the term "purchase" is at odds with the plain meaning purpose of the act, that is to provide consumers an opportunity to save money on the premiums by waiving stacking. In other words, Plaintiff would have us rule that an insured can possess a multi-vehicle policy without ever having "purchased" it and hence without the provisions of section 1738(c) applying.[11]

Plaintiff quotes the following from Generette v. Donegal in support of its position: "Before us is another instance of an auto insurance consumer who makes a coverage decision that results in monetary savings, and then sues the carrier after being injured and realizing that more or better coverage would have been available absent the cost-saving decision." 884 A.2d 266, 267 (Pa. Super. Ct. 2005). State is incorrect to assert that this quote is applicable to defendant. Defendant is an auto insurance consumer that made a coverage decision not to obtain superfluous coverage. But then when the coverage may have been applicable, instead of offering the insured the opportunity to purchase it, State rested on a previous waiver of coverage that now saves it (State) money. To accept

---

[11]State argues that it is significant that the original single-vehicle policy included an after-acquired-vehicle clause that allowed defendant to add the subsequent vehicles. We find no significance to this clause. Rather, we find it significant that regardless of whether defendant could later add vehicles to the policy, at the policy's inception only one vehicle was covered.

State's argument does not foster cost containment with regard to insurance coverage, but rather, fosters cost savings to the insurance company at the expense of an innocent consumer who was not provided the opportunity to waive coverage when that coverage became applicable as provided under Pennsylvania law.

State also cites Craley v. State Farm Fire and Casualty Co., 895 A.2d 530 (Pa. 2006) in support of its position.  The Craley opinion deals with whether inter-policy stacking can be waived just as intra-policy stacking can be waived.  The court held that it can, and the free consumer choice is one of the ways that the statute works to contain the cost of insurance.  Id. at 540.  Plaintiff argues that this emphasis on consumer choice and cost savings requires us to find that no new waiver of stacking is necessary when a vehicle is added to a single vehicle policy.  We disagree.  As set forth above, the situation is radically different when an additional vehicle is added to a single-vehicle policy.  At that point, stacking could actually provide additional coverage to the insured as opposed to the illusory intra-policy stacking benefit available when only one vehicle is covered by the policy.  The "consumer choice" made by the insured at the inception of the policy is much different when additional vehicles are added and other options have significance.  State seeks to *limit* the consumer choice to its own benefit rather than abiding by the statute and providing a new waiver when intra-policy stacking could actually mean something to the consumer.

State further argues that nothing in the MVFRL states or implies that a new waiver of stacking should be executed each time a vehicle is added to a policy of insurance via an after-acquired-vehicle clause.  While that

12

may be true, that is not our holding.  We hold that the plain language of the statute must prevail.  Again, the plain language reads:  "Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase [unstacked] coverage."  Id. at § 1738(c).   Here when the defendant purchased insurance for more than one vehicle under the policy, he was not provided the opportunity to waive the stacked limits of coverage.

In support of its position, State also cites Rupert v. Liberty Mut. Ins. Co., 291 F.3d 243 (3d Cir. 2002).  Rupert dealt with the MVFRL's requirement that a valid stacking waiver must be signed by the first named insured.  75 Pa.C.S. § 1738(e).  The issue was whether the plaintiff was bound by a stacking waiver signed by his deceased wife who was formerly the first named insured on the subject policy.  Rupert, 291 F.3d at 243.  The court held that the plaintiff was not "entitled to derive the benefits of stacked coverage because the waiver form executed by [his deceased wife] remained valid even after [he] became the first named insured under the policy."  Id. at 249.   The court noted that it seemed unfair for the plaintiff to reap the benefits of coverage he did not pay for and it "could compromise the legislative goal of reducing the cost of insurance."  Id.

In the instant case, State argues that it is even more appropriate to enforce the waiver because the one who signed it is the one who is now trying to void it.  We disagree.   The issue we are presented with does not involve who signed the waiver, but whether the waiver was provided at the appropriate time, i.e., when insurance was purchased for multiple vehicles. As we have discussed above, the opportunity to waive was not provided at

the appropriate time.  Hence, we find unconvincing plaintiff's reliance on <u>Rupert</u>.

**Conclusion**

For the reasons set forth above, we find that intra-policy stacking is available under the insurance policy at issue.   Plaintiff's motion for summary judgment will be denied. An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STATE AUTO PROPERTY & CASUALTY INSURANCE CO.,** | : | No. 3:07cv1415 |
| Plaintiff | : | (Judge Munley) |
| v. | : | |
| **PRO DESIGN, P.C.,** | : | |
| Defendant | : | |

# ORDER

**AND NOW**, to wit, this 17th day of June 2008, plaintiff's motion for summary judgment (Doc. 12 ) is hereby **DENIED** as we find that the intra-policy stacking is appropriate under the insurance policy at issue. As this decision disposes of all the issues that remain, the Clerk of Court is directed to close this case.

                                                  **BY THE COURT:**

                                                  **s/ James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court**